1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  VICTORINO LOZANO HERNANDEZ,      )   NO. CV 09-1626 SS
                                     )
12                   Plaintiff,      )
                                     )
13           v.                      )   **MEMORANDUM DECISION AND ORDER**
                                     )
14  MICHAEL J. ASTRUE,               )
    Commissioner of the Social       )
15  Security Administration,         )
                                     )
16                   Defendant.      )
    _____ )

17

18                       **INTRODUCTION**

19

20      Victorino Lozano Hernandez ("Plaintiff") brings this action seeking

21  to overturn the decision of the Commissioner of the Social Security

22  Administration (hereinafter the "Commissioner" or the "Agency") denying

23  his application for Disability Insurance Benefits ("DIB").  The parties

24  consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

25  undersigned United States Magistrate Judge.  For the reasons stated

26  below, the decision of the Agency is REVERSED and REMANDED for further

27  proceedings.

28

1

2

## PROCEDURAL HISTORY

3

4       Plaintiff filed an application for DIB on June 30, 2006.

5   (Administrative Record ("AR") 101).  He alleged a disability onset date

6   of May 20, 2005, due to poor hearing and eye sight, diabetes, arthritis,

    back and shoulder pain, as well as a hernia.  (AR 105).

7

8       The Agency denied Plaintiff's claim for DIB initially on November

9   14, 2006.  (AR 32-35).  This denial was upheld upon reconsideration on

10  April 2, 2007.  (AR 43-47).  Plaintiff then requested a hearing, (AR

11  50), which was held before Administrative Law Judge ("ALJ") F. Keith

12  Varni on September 5, 2008.  (AR 19-29).  Plaintiff appeared with

13  counsel and testified.  (Id.).  Plaintiff was also assisted by an

14  interpreter.  (AR 21).

15

16      On November 5, 2008, the ALJ issued a decision denying benefits.

17  (AR 8-16).  Plaintiff sought review of the ALJ's decision before the

18  Appeals Council, which denied his request on July 10, 2009.  (AR 1-3).

19  The ALJ's decision therefore became the final decision of the

20  Commissioner.  (Id.).  Plaintiff commenced the instant action on August

21  27, 2009.

22

23            THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

24

25      To qualify for disability benefits, a claimant must demonstrate a

26  medically determinable physical or mental impairment that prevents him

27

28

2

from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

3

(5)   Is the claimant able to do any other work?  If not, the
      claimant is found disabled.  If so, the claimant is
      found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

\\

\\

---

[2]   Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

4

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 16). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2005. (AR 10). Next, at step two, he found that Plaintiff had a "questionably severe impairment" of "degenerative changes involving the musculoskeletal system." (Id.).

At the third step, the ALJ found that the severe impairment at step two did not meet or medically equal a listed impairment. (AR 10).

Next, at step four, the ALJ found that Plaintiff was capable of performing his past relevant work ("PRW") as a "forklift driver as he performed that job." (AR 16). He also found that Plaintiff had the RFC to perform medium work with restrictions. (AR 10). Specifically, the ALJ found that Plaintiff had the RFC to perform medium work restricted to "frequent pushing/pulling with the bilateral upper and lower extremities and [] frequent overhead reaching with the right upper extremity," as well as "constant, forceful reaching with the right upper extremity." (AR 10-11). Postural limitations (i.e., climbing ramps/stairs/ladders/ropes/scaffolds, balancing, stopping, kneeling, crouching, and crawling) were limited to an occasional basis. (AR 10-11). Lastly, Plaintiff should avoid concentrated exposure to extreme cold and wetness. (AR 11). Because the ALJ determined that Plaintiff

1  could perform his PRW, he concluded that Plaintiff was not disabled and
2  did not proceed to step five.  (AR 16).

3

4                          **STANDARD OF REVIEW**

5

6       Under 42 U.S.C. § 405(g), a district court may review the
7  Commissioner's decision to deny benefits.  The court may set aside the
8  Commissioner's decision when the ALJ's findings are based on legal error
9  or are not supported by substantial evidence in the record as a whole.
10  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.
11  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

12

13      "Substantial evidence is more than a scintilla, but less than a
14  preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence
15  which a reasonable person might accept as adequate to support a
16  conclusion."  Id.  To determine whether substantial evidence supports
17  a finding, the court must "'consider the record as a whole, weighing
18  both evidence that supports and evidence that detracts from the
19  [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny
20  v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can
21  reasonably support either affirming or reversing that conclusion, the
22  court may not substitute its judgment for that of the Commissioner.
23  Reddick, 157 F.3d at 720-21.

24

25

26

27

28

1

2

**DISCUSSION**

3      Plaintiff contends the ALJ erred for several reasons: (1) the ALJ

4  did not provide clear and convincing reasons for rejecting Plaintiff's

5  subjective complaints, (Memorandum of Points of Authorities in Support

6  of Plaintiff's Complaint ("PC") 4-8); (2) the ALJ failed to properly

7  consider Plaintiff's depression, (PC at 8-10); (3) the ALJ failed to

8  properly consider the opinion of Dr. Noel Lustig, (PC at 10-11); (4) the

9  ALJ failed to properly consider the opinion of Dr. Leslie W. Metcalf.

10 (PC at 11-13).

11

12      The Court agrees with Plaintiff's first, second and third grounds

13 for remand.  For the reasons discussed below, the Court finds that the

14 ALJ's decision should be reversed and this action remanded for further

15 proceedings.

16

17 **A.**     **The ALJ Failed To Provide Clear And Convincing Reasons For**

18         **Rejecting Plaintiff's Subjective Complaints**

19

20      Plaintiff claims that the ALJ failed to articulate clear and

21 convincing reasons for rejecting his subjective complaints testimony.

22 (PC at 4-8).  The Court agrees.

23

24      The ALJ may reject a plaintiff's testimony if he or she makes an

25 explicit credibility finding that is "supported by a specific, cogent

26 reason for the disbelief."  <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th

27

28

7

1   Cir. 1990) (internal citations omitted).  Unless there is affirmative
2   evidence showing that the plaintiff is malingering, the ALJ's reasons
3   for rejecting the plaintiff's testimony must be "clear and convincing."
4   Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Moreover, the ALJ
5   may not discredit a claimant's testimony of pain and deny disability
6   benefits solely because the degree of pain alleged by the claimant is
7   not supported by objective medical evidence.  Bunnell v. Sullivan, 947
8   F.2d 341, 346-47 (9th Cir. 1991).

9

10      Plaintiff testified that he had pain and problems with his eye
11  sight, neck, shoulders, knees, and depression.  (AR 24).  Plaintiff also
12  testified that he could only sit for fifteen minutes, and stand and/or
13  walk no more than ten minutes.  (AR 25-26, 140).  The ALJ found that
14  Plaintiff had medically determinable impairments that could reasonably
15  be expected to cause the alleged symptoms.  (AR 11).  However, the ALJ,
16  in a conclusory fashion, stated that Plaintiff's statements "concerning
17  the intensity, persistence and limiting effects of these symptoms [we]re
18  not credible to the extent they [we]re inconsistent with [Plaintiff's]
19  residual functional capacity assessment."  (AR 14).  The ALJ failed to
20  articulate any other reasons for discounting Plaintiff's subjective
21  complaints testimony.  (AR 10-16).

22

23      The ALJ's credibility conclusion, that Plaintiff's complaints were
24  not credible because they were inconsistent with Plaintiff's assessed
25  RFC, relied primarily on Plaintiff's medical records.  (AR 11-13).
26  However, even if Plaintiff's medical records did not support the extent
27  of Plaintiff's subjective symptoms testimony, this fact, by itself,
28

8

would not be sufficient for the ALJ to reject Plaintiff's testimony. See Lester, 81 F.3d at 834 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.)"

Furthermore, the ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284 (emphasis added); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Although the ALJ characterized Plaintiff's statements regarding the impact of his impairments on his ability to work "not credible," we cannot glean any other reasons from the ALJ's opinion which portions of Plaintiff's testimony he did or did not credit. (AR 10-16).

It appears the ALJ may have discounted Plaintiff's credibility based on his assertion that he spoke very little English. (AR 15). The ALJ "doubt[ed] his asserted inability to speak English" because Plaintiff had lived in the United States for "at least 36 years," and his children went to school here. (Id.). However, Plaintiff's record was replete with evidence indicating that Plaintiff spoke very little English and was in need of an interpreter. (AR 22, 103, 158, 169, 201, 211, 236, 264, 280, 361, 367, 370, 392, 417, 444, 465, and 497). Thus,

to the extent this was a reason to reject Plaintiff's credibility, it was not a legitimate reason, as the record demonstrated the opposite conclusion, i.e., that Plaintiff had limited English skills.

The ALJ also stated that the Plaintiff "drives and lives in a house with his family and works in and out of the house." (AR 15). To the extent this is the ALJ's attempt to use Plaintiff's daily activities to reject his credibility, this observation is too vague. The Ninth Circuit has admonished that "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722.

As there is no evidence to support a finding that Plaintiff was malingering (and the ALJ failed to expressly make such a finding), the ALJ was required to provide "clear and convincing" reasons to reject her testimony. The ALJ may consider the following factors when weighing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ failed to provide clear reasons for rejecting Plaintiff's testimony in the current case. Remand is required.

**B.     The ALJ Failed To Properly Consider Plaintiff's Depression**

Plaintiff claims the ALJ failed to properly consider Plaintiff's depression. (PC at 8-10). Specifically, Plaintiff argues the ALJ erred by finding that his depression was not severe. (<u>Id.</u>). The Court agrees.

By its own terms, the evaluation at step two is a <u>de</u> <u>minimis</u> test intended to weed out the most minor of impairments. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001)(stating that the step two inquiry is a <u>de</u> <u>minimis</u> screening device to dispose of groundless claims)(quoting <u>Smolen</u>, 80 F.3d at 1290). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individuals ability to work." <u>Smolen</u>, 80 F.3d at 1290 (internal quotations and citations omitted).

Here, the ALJ applied more than a <u>de</u> <u>minimis</u> test when he determined that Plaintiff's depression was not severe. (AR 10). Moreover, the ALJ failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the

11

five-step sequential evaluation process with additional regulations.[3] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)(citing 20 C.F.R. § 416.920a)(per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work.   20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2)-(4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

---

[3]   These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment.  Social Security Ruling ("SSR") 96-8p.

The regulations describe an impairment as follows:

A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing SSR 96-4p).

Here, the medical evidence supports a finding that Plaintiff's depression meets the de minimis test at step two. (AR 260-72, 361-65, 496-508). Plaintiff was evaluated by Noel Lustig, M.D., ("Dr. Lustig"), on July 19, 2006, April 17, 2007, and September 11, 2007, in connection with his workers' compensation claim. (Id.).

On July 19, 2006, Dr. Lustig completed a comprehensive psychiatric report evaluation and treatment of Plaintiff. (AR 260-72). Dr. Lustig diagnosed Plaintiff with major depression, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of forty five. (AR 267). Specifically, Dr. Lustig stated that "the patient has depression most of the day, every day, and experiences anxiety, sadness, fatigue,

13

confusion at times, and trouble with cognition.  He has poor sleep, nightmares, a loss of appetite, and a weight loss of over 10 pounds." (Id.).  Dr. Lustig further noted that Plaintiff has a "psychiatric disability . . . and it is a legitimate claim." (AR 268).  Dr. Lustig prescribed Cymbalta for Plaintiff's depression and pain, as well as Ambien-CR to help him sleep.  (AR 271).

On April 17, 2007, Plaintiff was again evaluated by Dr. Lustig. (AR 496-508).  Plaintiff acknowledged some, but "not too much" improvement both psychiatrically and physically on this visit.  (AR 498).  Dr. Lustig reported that the improvement was associated with Plaintiff's use of Cymbalta, Ambien, and Xanax.  (AR 498-99).  Because Dr. Lustig had noticed some improvement, Dr. Lustig assigned Plaintiff a GAF score of fifty.[4]  (AR 501).  Dr. Lustig again diagnosed Plaintiff with major depression.  (Id.).  He also noted that Plaintiff "has made improvement [] and he is not having suicidal ideation any longer . . . [but] I do not think he can get any better than he is now." (AR 503). Thus, Dr. Lustig concluded Plaintiff had reached his "maximal medical improvement on a psychiatric basis," and declared Plaintiff "permanent and stationary." (Id.).

Dr. Lustig also issued a work function impairment assessment of Plaintiff on April 17, 2007.  (AR 507-08).  He found Plaintiff to have moderate (impairment markedly limiting the function to work) to severe (precluding the function to work) levels of impairment in all eight work

_____

[4]  On July 19, 2006, Dr. Lustig assigned Plaintiff a GAF score of forty five.  (AR 267).

14

1   functions, which included an ability to: (1) comprehend and follow
2   instructions, (2) perform simple and repetitive tasks, (3) maintain a
3   work pace appropriate to a given work load, (4) perform complex or
4   varied tasks, (5) relate to other people beyond giving and receiving
5   instructions, (6) influence people, (7) make generalizations,
6   evaluations, or decisions without immediate supervision, and (8) accept
7   and carry out responsibility for direction, planning, and control. (AR
8   507).

9

10      On September 11, 2007, Dr. Lustig re-evaluated Plaintiff and noted
11  that he was still taking Zoloft, Ambien, and Xanax for his depression
12  and anxiety. (AR 361). Dr. Lustig diagnosed Plaintiff as continuing
13  to have major depression but in partial remission because Plaintiff had
14  been "somewhat better" on this visit. (AR 364). Dr. Lustig again
15  assessed Plaintiff a GAF score of fifty. (Id.).

16

17      These medical findings indicate that Plaintiff suffered from
18  depression for more than twelve months and that Plaintiff's depression
19  was a severe impairment. See 20 C.F.R. § 416.927(a)(2) ("Medical
20  opinions . . . that reflect judgments about the nature and severity of
21  [a plaintiff's] impairment(s), including symptoms, diagnosis and
22  prognosis," are evidence that a plaintiff may submit in support of his
23  disability claim). The ALJ, however, failed to follow the Secretary's
24  regulations for evaluating mental impairments. (AR 10-16). Thus, it
25  appears that the ALJ applied more than a de minimis test and his
26  conclusion at step two that Plaintiff did not suffer from a severe
27  mental impairment was error. See 20 C.F.R. § 416.920a(b)(1).

28

                                   15

Because the ALJ improperly evaluated Plaintiff's mental health impairment at step two, the case must be remanded to remedy this defect. Upon remand, the ALJ must conduct the supplemental evaluation of mental impairment evidence.   Normally, the ALJ must first determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work.  20 C.F.R. § 416.920a(b)(1).  However, this Court has determined that there is medical evidence that Plaintiff suffers from a mental impairment relevant to his ability to work.  Thus, the ALJ need not address this question.  Accordingly, the ALJ must only complete the remaining inquiries required in the supplemental evaluation of mental impairment evidence.[5]

## C.   The ALJ Failed To Properly Consider The Opinion of Dr. Noel Lustig

Plaintiff claims the ALJ did not properly consider the uncontroverted opinion of Dr. Lustig.  (PC at 10-11).  The ALJ rejected Dr. Lustig's mental limitations of Plaintiff because he found Dr. Lustig's opinion was "unsupported by the mental status examination and

---

[5]   Specifically, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4).  Next, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.   20 C.F.R. § 416.920a(d).  If the mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

found no objective evidence of a severe mental impairment." (AR 15). Plaintiff contends that the ALJ erred by failing to give sufficient reasons for rejecting the opinion of Dr. Lustig. (PC at 10). The Court agrees.

**1.    The ALJ's Reason #1:  Dr. Lustig's Opinion Was Unsupported By The Mental Status Examination**

The ALJ rejected Dr. Lustig's opinion because he concludes it was unsupported by Dr. Lustig's own April 17, 2007 mental status examination of Plaintiff. (AR 15). Specifically, the ALJ rejected Dr. Lustig's conclusion that Plaintiff was "permanent and stationary" and "appear[ed] to be 100 percent disabled." (Id.).

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). However, the ALJ may not reject the uncontroverted opinion or ultimate conclusions of a treating physician without providing "clear and convincing" reasons supported by substantial evidence in the record. Id. at 830-31.

Dr. Lusting was Plaintiff's psychiatric treating physician. (AR 260-72, 361-65, 496-508). Dr. Lustig evaluated and treated Plaintiff on three different occasions.[6]  No other physicians were employed to

---

[6]  July 19, 2006, April 17, 2007, and September 11, 2007. (AR 260-72, 361-65, 496-508).

17

evaluate Plaintiff's mental health in connection with his worker's compensation or social security disability claims. (See AR 158-509). Thus, Dr. Lustig's opinion was uncontroverted. (Id.). To reject a treating doctor's uncontroverted opinion, the ALJ must "present clear and convincing reasons for doing so." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

On April 17, 2007, Dr. Lustig opined that Plaintiff suffered from major depression which moderately to severely impaired his ability to perform work. (AR 501, 507). Dr. Lustig also declared Plaintiff "permanent and stationary." (AR 506). The ALJ found this opinion to be in conflict with Dr. Lustig's own mental status examination conducted on April 17, 2007. (AR 15). Specifically, the ALJ noted that on a April 2007 mental status examination, Dr. Lustig concluded:

> [Plaintiff] exhibited only slight fear, anxiety, apprehension and depression. He did not exhibit any illusions or any auditory/visual hallucinations . . . he did not exhibit impaired attention span, abstract thinking, calculation ability, or intelligence. His judgment was slightly impaired for making reasonable life decisions. He did not exhibit impairment in immediate recall, recent memory, or remote memory. In the content of his thoughts, he did not exhibit obsessions, compulsions, phobias, derealizations, depersonalizations, suicidal ideation, homicidal ideation, delusions, ideas of reference, or ideas of influence. In his

1    stream of thought, he exhibited slight associational
2    disturbance. His thinking was concrete. His thought flow was
3    slightly decreased and slowed. He was oriented to person,
4    place, and time.

5

6    (Id.).

7

8        Despite the ALJ's dissatisfaction with Dr. Lustig's mental
9    assessment of Plaintiff, the ALJ did not develop the record beyond the
10   opinion of Dr. Lustig. (AR 15). The ALJ merely dismissed Dr. Lustig's
11   opinion, in a conclusory fashion, because the ALJ found that it was
12   "unsupported by the mental status examination." (Id.). Given that the
13   ALJ was dissatisfied with Dr. Lustig's assessment, the ALJ should have
14   subpoenaed Dr. Lustig or required a further mental health evaluation of
15   Plaintiff. Failure to sufficiently develop the record constitutes
16   grounds for remand. Tonapetyan v. Halter, 242 F.3d 1144, 1151 (9th Cir.
17   2001). To the extent there was a conflict within Dr. Lustig's
18   evaluation of Plaintiff, the conflict was not properly resolved by the
19   ALJ. (AR 15). The ALJ's proffered reason for rejecting Dr. Lustig's
20   opinion does not, therefore, qualify as a "clear and convincing" reason.

21

22       The ALJ also infers that Plaintiff's referral to Dr. Lustig was not
23   because Plaintiff had any significant mental problems that prevented him
24   from working, but because it was the "usual psychiatric evaluation"
25   associated with workers' compensation claims.[7] (AR 15, Memorandum in

26       ───────────────────
27       [7] The ALJ stated, "[u]nfortunately for the claimant, he was caught
     up in workers' compensation litigation and shuttled to a variety of
28   doctors, and the case has blossomed far beyond the original inguinal

19

Support of Defendant's Answer ("DA") 5).  However, the ALJ has a duty to translate Dr. Lustig's workers' compensation findings into Social Security terms.  Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988); Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002).  Although workers' compensation disability ratings are not controlling in Social Security cases, an ALJ must nevertheless evaluate medical opinions stated in workers' compensation terminology just as he would evaluate any other medical opinion.  Id.  The ALJ must "translate" terms of art contained in such medical terminology in order to accurately assess the implications of those opinions for the Social Security disability determination.  See Desrosiers, 846 F.2d at 576. "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.'"  Booth, 181 F. Supp. 2d at 1105.  Here, although Dr. Lustig made findings relevant to his workers' compensation evaluation of Plaintiff, they were not translated for determining Plaintiff's eligibility for social security benefits.  (See AR 260-72, 361-65, 496-508).  Thus, the case must be remanded to remedy this defect.

Upon remand, the ALJ should request that Plaintiff undergo a consultative examination with another mental health physcian in order

hernia repair.  Included in the workers' compensation referrals was the usual psychiatric evaluation.  There is no severe mental impairment and none of the Part B criteria existed."  (AR 15).

1 to fully develop the record.  In addition, if the ALJ remains concerned
2 about Dr. Lustig's conclusions, the ALJ may seek further evidence from
3 Dr. Lustig or subpoena him to testify.  20 C.F.R. § 404.1512(e).  The
4 ALJ must also translate the workers' compensation findings into
5 appropriate social security terminology.

7 **2.   The ALJ's Reason #2: The ALJ Finds No Objective Evidence Of**
8 **A Severe Mental Impairment**

10      The ALJ also rejected Dr. Lustig's opinion because he incorrectly
11 asserts that he did not find any objective evidence of a severe mental
12 impairment.  (AR 10, 15).  As discussed above, <u>see</u> Discussion, <u>supra</u>
13 Section B, the record contradicts the ALJ's assertion that Plaintiff's
14 depression was not severe.  Accordingly, that assertion is not a "clear
15 and convincing reason," supported by substantial evidence in the record
16 for rejecting the opinion of Dr. Lustig.  Thus, the case must be
17 remanded to remedy this defect.

19      Upon remand, the ALJ must provide clear and convincing reasons for
20 disregarding any uncontroverted opinion of Dr. Lustig.

22 **D.   Remand Is Required to Remedy Defects in the ALJ's Decision**

24      Remand for further proceedings is appropriate where additional
25 proceedings could remedy defects in the Commissioner's decision.  <u>See</u>
26 <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir.), <u>cert. denied</u>, 531 U.S.

21

1  1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000); <u>Kail v. Heckler</u>, 722

2  F.2d 1496, 1497 (9th Cir. 1984).

3

4  **CONCLUSION**

5

6      Consistent with the foregoing, IT IS ORDERED that judgment be

7  entered REVERSING the decision of the Commissioner and REMANDING this

8  matter for further proceedings consistent with this decision.  IT IS

9  FURTHER ORDERED that the Clerk of the Court serve copies of this Order

10  and the Judgment on counsel for both parties.

11

12  DATED: April 26, 2010

13

14

15

16                          _____/S/_____
                            SUZANNE H. SEGAL
17                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

22